[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Crystal and Joseph, A.K.A. Joey, were adjudicated neglected and committed to the Department of Children and Families (hereinafter, DCF) on December 15, 1997. The children's commitments were extended effective December 15, 1998, December 15, 1999, and December 15, 2000. On December 7, 1998, the Court found that reunification efforts with parents were no longer appropriate. On August 3, 2000, the mother filed a Motion to Revoke commitment and return custody and guardianship to her. On January 25, 2001, DCF filed a Motion to Modify asking that guardianship be transferred to the maternal aunt, Pauline R. and her husband Donald. Both motions were consolidated on January 25, 2001. This Court heard evidence on January 25, 2001, March 2, 2001, January 14, 2002, March 18, 2002 and April 5, 2002. Court dates scheduled and lost in anticipation of an agreement were April 23, 2001 and August 30, 2001. On November 15, 2001, the proposed permanency plan was challenged by mother and also consolidated with this hearing. Evidence was concluded on April 5, 2002 and briefs ordered. However, on May 30, 2002, mother's Motion to Reopen Evidence was granted and additional evidence was taken on August 7, 2002.
For the Motion to Revoke, this Court must decide if the movant has established that no cause for commitment exists. If the burden is met, the opposing party has the burden of proof that revocation would not be in the best interest of the child. Each burden is by a fair preponderance of the evidence. For the motion seeking to transfer guardianship, the Court must determine by a fair preponderance of the evidence whether transfer of guardianship is in the best interest of the children; and must make a finding that the proposed guardians are suitable and worthy persons to assume guardianship. Section 45a-617 of the C.G.S. gives guidance as to what factors a court should take into consideration when appointing a guardian of the person of a minor:
 When appointing a guardian or coguardians of the person of a minor, the court shall take into CT Page 15592 consideration the following factors: (1) The ability of the prospective guardian or coguardians to meet, on a continuing day to day basis, the physical, emotional, moral and educational needs of the minor; (2) the minor's wishes, if he or she is over the age of twelve or is of sufficient maturity and capable of forming an intelligent preference; (3) the existence or nonexistence of an established relationship between the minor and the prospective guardian or coguardians, and (4) the best interests of the child.
Joey and Crystal were removed from their parents in December, 1996 due to allegations of drug usage and trafficking, and serious neglect and abuse. They were initially placed with the maternal grandmother, and later moved to the maternal aunt and uncle in Maine in April, 1999, where they remain today. This move was purported to be for a "vacation", however, the children were enrolled in school in Maine and in counseling, which was to help prepare them for "the transition". No hearing was afforded mother, as required by statute, in that the move was clearly not for a vacation. DCF was subsequently reprimanded and fined for violation of the law.
Mother was not in favor of placement of the children in Maine, and had and continues to have a bad relationship with her sister, which DCF was aware of when they decided to place them in Maine. The visitation records indicate that visits with mother when the children were in Connecticut were positive and mother had a lot of contact with the children. Due to the children being moved approximately eight (8) hours away from mother, and the strained relationship between mother and maternal aunt, mother has had irregular and infrequent visitation with the children since their move the Maine. These factors also hampered any reasonable hope of regaining a relationship of trust between mother and the children, who suffered from post traumatic stress syndrome as a result of their treatment in parents' care. Mother has been consistent in her position that because DCF moved the children to Maine, they are responsible for the deterioration in the relationship between mother and children and for her inability to maintain a close bond with them and work effectively to regain custody of them. She asserts that because she has now rehabilitated and the move was illegally made, the children should be returned to her. This position, however, makes assumptions which the this Court is not willing to make. Numerous court hearings have occurred since the children's commitment to address mother's rehabilitation. On each occasion, it was reported that she and Mr. S were residing in a motel and that mother was not engaged in individual counseling until June of 2001. Mother did not make sufficient progress in her rehabilitative efforts CT Page 15593 until well into the children's placement. Had the children remained in Connecticut, would they have been in relative placement or with strangers? Would they have been able to remain in placement together? Would they not have bonded to their placements here just as they have to their aunt and uncle? These are questions which cannot be answered.
Secondly, as ruled in Joshua S., this Court must decide what is in the best interest of the children now. Under the Best Interest Analysis in Joshua S., Chief Justice Sullivan writes that, "even if the department's alleged mishandling of this case eliminated the P's from consideration in its early stages, resulting in Joshua S.'s temporary placement with the V's, it was proper for the trial court, in making its ultimate custody determination, to consider that placement . . . [T]he [trial] court was bound to consider the child's present best interests and not what would have been in [his] best interest at some previous time". (citing In reJuvenile Appeal (Anonymous), 177 Conn. 648, 664 (1979).
Mother's current situation appears to be that she has stable and appropriate housing and income; is engaged in counseling; cooperates with DCF when asked; keeps her whereabouts known to them and has not engaged in criminal activity. The testimony of mother, supported by her therapist, is that she has been clean and sober from alcohol and drugs for approximately three (3) years as of July, 2002. Mother requested that she be hair tested to confirm this, however, DCF made no efforts to arrange this. No evidence was offered to suggest that mother has returned to abusing drugs or alcohol. She has, over at least the last two (2) years, fought to prove that she has changed from the destructive circumstances which lead to the removal of her children, and that she can be a safe, appropriate parent to them. There is no question that she loves her children very much, and her efforts should be therapeutically conveyed to them. Unfortunately, however, much of mother's progress has simply come too late in the children's lives. Mr. S has not been involved with the case or the children.
The children's current situation is that they have been out of mother's care for six (6) years and have lived with their aunt and uncle for the past three and one-half years. They have been provided with the stability, support and care they need and are fortunate that their aunt and uncle have been there for them. Mr. and Mrs. R. have made adjustments to their lives and alterations to their home to enable them to take the children into their care. It is clear that they love their niece and nephew very much. The children have expressed to their maternal aunt, their individual therapist, DCF and their attorney that they wish to continue residing with their aunt and uncle and visit with their mother. CT Page 15594
There was testimony given by the DCF social worker as well as others that there is a bond between mother and the children and that they should continue to have contact with one another. This is in spite of mother's belief that her sister is negatively influencing the children against her. There was also much testimony, which convinces the Court that the relationship between mother and her sister is such that if guardianship is transferred to aunt and uncle without court orders or further involvement from DCF or the Court, that mother will eventually be cut out of the children's lives.
Based on the totality of circumstances, this Court finds it in the best interests of Joey and Crystal that they remain with their maternal aunt and uncle, but maintain a significant relationship with their mother. The Court further finds that reasons for commitment to DCF no longer exist. Therefore, this Court hereby enters the following ORDERS:
1. Commitment of Crystal S. Joseph S. to DCF is hereby revoked.
2. Guardianship of Joseph and Crystal is hereby vested jointly in maternal aunt, Pauline R. and mother, Eleanor M.[1] This Court finds both Pauline R. and Eleanor M. to be suitable and worthy persons to assume guardianship of the children.
3. The children shall continue to reside with their maternal aunt, who will make all decisions regarding school, medical care and day to day care. Mother is to be consulted on serious or life-threatening medicals decisions.
4. Mother shall be allowed a minimum of two (2) visits per month, the cost of one visit to be born by her and the cost of one visit to be born by maternal aunt. Extended visits during holidays, and vacations may be arranged if appropriate. Consideration shall be given to the wishes of the children in deciding where and how visits should occur.
5. Mother shall be allowed unsupervised visitation with children as long as she is sober and not under the influence of alcohol or drugs. Earnest efforts shall be made by co-guardians to make up any visits missed due to circumstances beyond the control of either guardian, e.g., weather conditions, illness.
6. Reasonable telephone contact shall be allowed mother.
7. The children shall not be exposed to illegal drugs or alcohol abuse by either guardian. CT Page 15595
8. The children shall be appropriately supervised and protected from harm by both guardians.
9. The children shall not be subjected to inappropriate physical discipline by either guardian or anyone else.
10. The children shall not have unsupervised contact with their sibling, Jeffrey.
11. Both guardians shall refrain from making derogatory remarks to thechildren about the co-guardian, and from negatively influencing thechildren against the co-guardian.
12. The children's therapist shall be asked to work with them to help them understand the impact and significance of these orders on them.
13. The parties are authorized to release a copy of this decision to the children's therapist.
14. All ORDERS are conditioned upon the best interests of the children.
15. Jurisdiction of this matter shall remain in Connecticut.
Harleston, J.